**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FRANCINE HANCOCK, a/k/a,<br>FRANCINE COLLORO,<br><br>Plaintiff,<br><br>v.<br><br>BEAUTY FASHION SALES GROUP INC.,<br>LINDSAY CRAMES SAVILLE, a/k/a,<br>LINDSAY CRAMES, a/k/a LINDSAY SAVILLE,<br><br>Defendants. | No. 1:24-cv-03921-MKV |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS BEAUTY FASHION SALES GROUP INC.'S AND LINDSAY SAVILLE'S**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

PETRILLO KLEIN & BOXER LLP
655 Third Avenue, 12th Floor
New York, New York 10017

*Counsel for Defendants*

## TABLE OF CONTENTS


PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 3

A. Parties in This Action .......... 3

B. Saville Hires Plaintiff as a Consultant .......... 5

C. Plaintiff Alleges the Parties Entered into Multiple Contracts .......... 6

i. The PEA .......... 8

ii. The 2022 Compensation Agreement .......... 9

D. Procedural History .......... 10

STANDARD OF REVIEW .......... 13

ARGUMENT .......... 15

I. Plaintiff Has Not Properly Served Defendants .......... 15

A. Plaintiff Failed to Properly Serve BFSG .......... 16

B. Plaintiff Failed to Properly Serve Saville .......... 18

II. The SAC Fails to State an FLSA Claim .......... 21

A. Plaintiff Does Not State a Cognizable FLSA Claim .......... 22

B. Plaintiff Fails to Establish She was An Employee as Required by the FLSA .......... 24

III. The SAC Fails to State a NYLL Claim .......... 27

A. Plaintiff Does Not Allege She Was an Employee as Required by the NYLL .......... 28

B. The 2022 Bonus Did Not Constitute "Wages" Under the NYLL .......... 29

C. Plaintiff Has No Enforceable Right to the 2022 Bonus .......... 31

IV. The SAC Fails to State a Breach of Contract Claim .......... 32

A. The PEA .......... 33

B. The 2022 Compensation Agreement .......... 34

V. The SAC Fails to State Claims for Unjust Enrichment and Promissory Estoppel .......... 36

A. Plaintiff's Equitable Claims Are Subject to the Statute of Frauds .......... 36

B. Plaintiff's Equitable Claims Are Duplicative of the Contract Claim .......... 37

CONCLUSION .......... 38

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Albee Specialists, Inc. v. Paragon Sportswear, Inc.*,
1990 WL 155593 (S.D.N.Y. Oct. 10, 1990) ..... 10

*Alkholi v. Macklowe*,
858 F. App'x 388 (2d Cir. 2021) ..... 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 8, 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 8

*Brock v. Superior Care, Inc.*,
840 F.2d 1054 (2d Cir. 1988) ..... 14

*Bynog v. Cipriani Grp., Inc.*,
1 N.Y.3d 193 (2003) ..... 17

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ..... 8

*City Calibration Ctrs. Inc. v. Heath Consultants Inc.*,
727 F. Supp. 3d 332 (E.D.N.Y. 2024) ..... 24

*Corsello v. Verizon N.Y., Inc.*,
18 N.Y.3d 777 (2012) ..... 24

*Cox v. German Kitchen Ctr. LLC*,
2023 WL 8648839 (S.D.N.Y. Dec. 14, 2023) ..... 15

*DeLuca v. AccessIT Grp., Inc.*,
695 F. Supp. 2d 54 (S.D.N.Y. 2010) ..... 7

*Doehla v. Wathne Ltd., Inc.*,
1999 WL 566311 (S.D.N.Y. Aug. 3, 1999) ..... 22, 24

*Flick v. Stewart-Warner Corp.*,
76 N.Y.2d 50 (1990) ..... 9

*Flannery v. General Motor Sports*,
86 N.Y.2d 771 (1995) ..... 9

*Franze v. Bimbo Foods Bakeries Distrib.*,
2019 WL 2866168 (S.D.N.Y. July 2, 2019) ..... 17

*Futia v. Roberts*,
2023 WL 8237246 (S.D.N.Y. Nov. 28, 2023)....................10

*Gallagher v. N.Y.C. Health & Hosps. Corp.*,
2017 WL 4326042 (S.D.N.Y. Sept. 20, 2017)....................23

*Georgia Malone & Co., Inc. v. Rieder*,
19 N.Y.3d 511 (2012)....................24

*Gen. Assembly Space, Inc. v. Soc. Fin. Career Impact Bond Gen. Assembly LLC*,
2024 WL 1020246 (S.D.N.Y. Mar. 8, 2024)....................24

*Grossman v. Simply Nourish Pet Food Co.*,
516 F. Supp. 3d 261 (E.D.N.Y. 2021)....................25

*Guiry v. Goldman, Sachs & Co.*,
31 A.D.3d 70 (1st Dep't 2006)....................18, 20

*Ivanov v. Builderdome, Inc.*,
2021 WL 2554620 (S.D.N.Y. June 22, 2021)....................17

*KJ Roberts & Co. v. MDC Partners Inc.*,
2014 WL 1013828 (S.D.N.Y. Mar. 14, 2014)....................22, 23, 24

*Kopec v. GMG Const. Corp.*,
2011 WL 2650597 (E.D.N.Y. July 6, 2011)....................11

*Komlossy v. Faruqi & Faruqi, LLP*,
2017 WL 722033 (S.D.N.Y. Feb. 23, 2017)....................20

*L-7 Designs, Inc. v. Old Navy, LLC*,
647 F.3d 419 (2d Cir. 2011)....................8

*Lansdowne Fin. Servs. Ltd. v. Binladen Telecomms. Co.*,
95 A.D.2d 711 (1st Dep't 1983)....................10

*Lewis v. Affiliated Enter. Sols., LLC*,
2024 WL 1652460 (N.D.N.Y. Apr. 17, 2024)....................13

*Monocoque Diversified Ints., LLC v. Aquila Air Cap. (Ir.) DAC*,
2024 WL 1312996 (S.D.N.Y. Mar. 27, 2024)....................21

Morgenwek v. Vision Cap. Advisors, LLC,
410 F. App'x 400 (2d Cir. 2011)....................22, 23, 24

*Muhammad v. Annucci*,
2023 WL 2908658 (S.D.N.Y. Feb. 27, 2023)....................12

*Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*,
723 F.3d 192 (2d Cir. 2013)....13

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
537 F.3d 168 (2d Cir. 2008)....24

*Nieves v. City of New York*,
2024 WL 1363570 (S.D.N.Y. Mar. 29, 2024)....3, 4

*Nungesser v. Columbia U.*,
169 F. Supp. 3d 353 (S.D.N.Y. 2016)....25

*O'Grady v. BlueCrest Cap. Mgmt. LLP*,
646 F. App'x. 2 (2d Cir. 2016)....20

*Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*,
301 F.3d 54 (2d Cir. 2002)....8

*Paschalidis v. Airline Rest. Corp.*,
2021 WL 5013734 (E.D.N.Y. Oct. 28, 2021)....13

*Peale v. James*,
2025 WL 2732859 (S.D.N.Y. Sept. 25, 2025)....11

*Pope v. Rice*,
2005 WL 613085 (S.D.N.Y. Mar. 14, 2005)....9

*Ryan v. Kellogg Partners Inst. Servs.*,
19 N.Y.3d 1 (2012)....18

*Saleem v. Corporate Transp. Grp., Ltd.*,
52 F. Supp. 3d 526, 540 (S.D.N.Y. 2014)....15

*Saleem v. Corporate Transp. Grp., Ltd.*,
854 F.3d 131 (2d Cir. 2017)....14, 15

*Sartor v. Toussaint*,
70 F. App'x 11 (2d Cir. 2002)....10

*Sellers v. Royal Bank of Can.*,
2014 WL 104682 (S.D.N.Y. Jan. 8, 2014)....15

*Short v. Churchill Benefit Corp.*,
2016 WL 8711349 (E.D.N.Y. Apr. 8, 2016)....16

*Spath v. Zack*,
36 A.D.3d 410 (1st Dep't 2007)....11

*Stop & Shop Supermarket Co. v. Goldsmith*,
2011 WL 1236121 (S.D.N.Y. Mar. 31, 2011)....9, 11

*Thin Film Lab, Inc. v. Comito*,
218 F. Supp. 2d 513 (S.D.N.Y. 2002)....22

*Truelove v. Ne. Cap. & Advisory, Inc.*,
95 N.Y.2d 220 (2000)....18, 19

*U.S. Bank Nat'l Ass'n v. Bank of Am., N.A.*,
2012 WL 6136017 (S.D.N.Y. Dec. 11, 2012)....17

*Vantone Grp. Ltd. Liab. Co. v. Yangpu Ngt Indus. Co.*,
2016 WL 3926449 (S.D.N.Y. July 15, 2016)....7

*Vega v. Hastens Beds, Inc.*,
339 F.R.D. 210 (S.D.N.Y. 2021)....7

*Vekaria v. Mthree Corp. Consulting Ltd.*,
2024 WL 4337542 (S.D.N.Y. Sept. 27, 2024)....19, 20

*Weiss v. Sherloq Revenue Sols., Inc.*,
2021 WL 965810 (S.D.N.Y. Mar. 12, 2021)....2

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
127 F. Supp. 3d 156 (S.D.N.Y. 2015)....2

**Statutes/Rules**

BCL § 307....9

CPLR § 308(4)....10

Fed. R. Civ. P. 4(m)....7

Fed. R. Civ. P. 12(b)(5)....1, 6, 7

Fed. R. Civ. P. 12(b)(6)....1, 6, 8

NYLL § 190(1)....18

NYLL § 190(2)....16

NYLL § 193(1)....16

N.Y. Gen. Oblig. Law § 5-701(a)(1)....21

29 U.S.C. § 203(e)(1)....14

Defendants Beauty Fashion Sales Group Inc. ("BFSG") and Lindsay Saville ("Saville," with BFSG, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss (the "Motion") Plaintiff Francine Hancock's ("Plaintiff") Second Amended Complaint (the "SAC"), ECF 25, pursuant to Federal Rules of Civil Procedure 12(b)(5) ("Rule 12(b)(5)") and 12(b)(6) ("Rule 12(b)(6)").

## PRELIMINARY STATEMENT

This action arises out of the relationship between an aggrieved consultant and one of her former clients. For years, Plaintiff provided consulting services to Saville and her company BFSG. During that time, Plaintiff, as would any consultant, provided monthly invoices bearing the name of her own company—F.M.C.H. LLC ("FMCH"). Defendants regularly paid Plaintiff's consulting fees and provided Plaintiff with 1099 tax forms reflecting those services. As Defendants' business flourished, they would, at times, provide Plaintiff with additional compensation reflecting the success of the company. In the fall of 2022, Plaintiff and Defendants ended their business relationship. Plaintiff now seeks a windfall due to the success of her former client by alleging she is owed a bonus based on two purported agreements, neither of which she has attached to her complaint in this action, and neither of which was ever reduced to a signed writing. Plaintiff's SAC—the fourth complaint she has filed against Defendants—brings five claims, all centered on money she believes she is owed. That money includes an invoice she sent to Defendants in December 2022 for work she never performed, and a bonus that she had no contractual right to following the end of the parties' business relationship.

Plaintiff has not only attempted three prior times to file meritorious claims, but she has also failed to appropriately serve either Defendant for the nearly eighteen months this action has been pending. For these reasons, and others addressed in this brief, Defendants ask this Court to end

Plaintiff's repeated efforts to allege any claim—or even to serve such futile claims on Defendants—and dismiss the SAC with prejudice.

## STATEMENT OF FACTS

### A. Parties in This Action

Plaintiff is a Texas resident who owns FMCH, a management consulting services business incorporated in Georgia in 2015. SAC ¶ 2; Ex. 1.[1] The Georgia Department of State's records show that FMCH was registered to provide "management consulting services" until it was dissolved on February 20, 2025, after this action commenced. Ex. 1. FMCH's website—www.francinehancock.com—describes the company as "a boutique agency for small and medium businesses serving the Beauty Industry + More" that "specialize[s] in operational efficiency and solve business problems by utilizing or integrating . . . software solutions such as Salesforce, Microsoft Outlook[,] . . . and Microsoft Teams." FMCH, *About Me*, www.francinehancock.com/about-me (last visited Oct. 24, 2025); Ex. 2.[2] When Defendants filed their first motion to dismiss on October 11, 2024, FMCH's website identified several of its previous clients, which included BFSG. Ex. 3.

BFSG is a Florida corporation that sells beauty and fashion products to independent retailers, such as spas and salons. SAC ¶¶ 3, 13, 32. Saville is the founder and owner of BFSG. *See id.* ¶ 3.

---

[1] "Ex. __" refers to exhibits to the Declaration of Marcelo A. Triana, dated October 27, 2025. On a motion to dismiss, the Court may take judicial notice of public records of a company's incorporation. *Weiss v. Sherloq Revenue Sols., Inc.*, 2021 WL 965810, at *4 (S.D.N.Y. Mar. 12, 2021).

[2] A party's representations on its own website, such as the statements on FMCH's website, are proper subjects for judicial notice on a motion to dismiss. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination." (citation omitted)).

### B. Saville Hires Plaintiff as a Consultant

In or around 2014, Saville first hired Plaintiff to provide consulting services to BFSG. *Id.* ¶ 14. Specifically, Plaintiff was hired to build out and manage BFSG's software for tracking sales and BFSG's email platform. *Id.* Initially, BFSG paid Plaintiff $1,000 per month. *Id.* ¶ 15. BFSG also provided Plaintiff with 1099 tax forms each year from 2014 through 2022. *Id.* ¶ 35. As Plaintiff performed her consulting services, she submitted invoices from FMCH to BFSG, for services rendered. For example, Plaintiff submitted invoices to BFSG for November and December 2022, which reflect that Plaintiff billed BFSG for "Salesforce Administration." *Id.* ¶¶ 28-29; Exs. 4-5.[3] The November and December 2022 invoices also identified Plaintiff's consulting services company as "Francine Hancock Consulting" in addition to FMCH, and listed a Texas address.

### C. Plaintiff Alleges the Parties Entered into Multiple Contracts

The SAC alleges that, on January 24, 2017, after years of working as a consultant, BFSG provided Plaintiff with a Phantom Equity Agreement ("PEA"), that granted Plaintiff equity in BFSG, replacing her prior salary of $1,000 per month. SAC ¶¶ 16-17. According to Plaintiff, this agreement provided her with shares of stock in BFSG pursuant to a vesting schedule. *Id.* ¶ 17. Following this supposed drastic change in compensation structure, Plaintiff alleges that BFSG offered Plaintiff the role of Chief Operations Officer, which she accepted, shifting her salary to approximately $202,000 annually. *Id.* ¶ 19.

After a short stint of not providing services for BFSG, Plaintiff alleges that, in December 2018, Saville asked Plaintiff to return in "a limited capacity," to which she accepted. *Id.* ¶¶ 20, 21. Plaintiff claims that, upon her return, a "new employment agreement"[4] provided her with a "23

[3] Although these invoices were not attached to the SAC, they are incorporated by reference in the SAC. *Nieves v. City of New York*, 2024 WL 1363570, at *3 n.1 (S.D.N.Y. Mar. 29, 2024).

[4] It is unclear from the SAC whether this is a new agreement or a continuation of the PEA.

hour a month schedule, acknowledged her equity agreement and it also included a year-end bonus payment." *Id.* ¶ 21.

The SAC states that in 2020 and 2021, Plaintiff worked 23 hours a month "doing clerical and administrative management tasks" and some "executive tasks." *Id.* ¶ 24. Plaintiff's annual compensation consisted of 12 monthly payments of $5,750, or $69,000 annually, and a "year end split of 50% . . . of BFSG's profits." *Id.* Plaintiff alleges that in August 2022, the parties entered into another compensation agreement (the "2022 Compensation Agreement"), which was purportedly in place through Plaintiff's departure from BFSG on November 11, 2022. *Id.* ¶ 26.

### i. The PEA[5]

Section 1 of the PEA states that Plaintiff is eligible to participate in BFSG's "Annual Bonus Plan," and that BFSG "shall make a bonus payment (each a 'Bonus Payment'), in respect of each fiscal year, calculated as your Percentage of the net pre-tax profits of the Company for such fiscal year before payment of any dividends to shareholders, so long as you remain an employee of the Company in good standing on the payment date." Ex. 6 § 1. The PEA defines "Percentage" to mean Plaintiff's "Equivalent Equity Interest, to the extent vested, expressed as a percentage of the fully diluted equity of [BFSG] as of a given date," *Id.* § 4(i), and defines "Equivalent Equity Interest" to mean "Twenty Five (25) shares of Common Stock." *Id.* § 4(h). While the PEA lists an effective date of December 2016, the PEA was never executed by BFSG. *Id.* at 1, 6.

### ii. The 2022 Compensation Agreement

The SAC alleges that the parties entered into the 2022 Compensation Agreement in August 2022, requiring Plaintiff to provide consulting services to BFSG for that year.[6] SAC ¶¶ 26, 47-48.

---

[5] The Court may consider the PEA on this Motion because it was incorporated by reference in the SAC. *Nieves*, 2024 WL 1363570, at *3 n.1.

[6] The SAC fails to allege whether the 2022 Compensation Agreement was made orally or in writing. Defendants assume that Plaintiff's allegations are that the 2022 Compensation Agreement was never reduced to writing.

As part of the 2022 Compensation Agreement, Saville allegedly agreed to pay Plaintiff $5,750 per month, for 23 hours of work, in addition to a bonus of 50% of BFSG's profits at the end of 2022 (the "2022 Bonus"). *Id.* ¶ 26. The SAC concedes that this was not a new agreement, but was the same compensation structure Plaintiff had with BFSG in years prior. *Id.* The SAC is unclear whether the purported 2022 Compensation Agreement continued, amended, or replaced the PEA.

The SAC alleges that on October 29, 2022, the parties decided to end their business relationship. *Id.* ¶ 27. On November 2, 2022, Saville told Plaintiff that her last day working with BFSG would be November 11, 2022. *Id.*

**D. Procedural History**

On January 16, 2024, Plaintiff filed a complaint in New York state court that largely overlapped with the facts and issues in this case. Dkt. 1, *Hancock v. Beauty Fashion Sales Grp. Inc.*, No. 650241/2024 (N.Y. Sup. Ct. Jan. 16, 2024). Plaintiff then filed her first federal complaint on May 22, 2024, and subsequently filed a First Amended Complaint ("FAC") on June 10, 2024. ECF 3, 8. The parties then exchanged pre-motion letters addressing Defendants' grounds for dismissing the FAC, including failure to properly serve Defendants. ECF 16, 20. On August 2, 2024, the Court provided Plaintiff with one "last opportunity to amend the complaint," and granted Defendants leave to file a motion to dismiss after the amended complaint was filed. ECF 21.

On August 31, 2024, Plaintiff filed the SAC: her fourth complaint alleging nearly identical facts as her earlier complaints.[7] The SAC asserts five causes of action: (1) violation of the Fair Labor Standards Act ("FLSA"), (2) violation of the New York Labor Law ("NYLL"), (3) breach of contract, (4) promissory estoppel and (5) unjust enrichment. Each claim is, in essence, based on

[7] The SAC lowered the monetary demand significantly from $821,943.11, FAC ¶ 4, to $261,700, SAC ¶ 4.

the same factual premise: that following Plaintiff's departure from BFSG, she was nonetheless entitled to two months of invoices in 2022, and a bonus payment for that same year.

On October 11, 2024, Defendants moved to dismiss the SAC pursuant to Rule 12(b)(5) and Rule 12(b)(6). ECF 28, 29. Plaintiff filed her opposition on October 25, 2024, and Defendants replied on November 1, 2024. ECF 32, 34. On September 8, 2025, the Court issued an Opinion and Order ("September 8 Order") holding that Plaintiff failed to properly serve Defendants, but allowing Plaintiff to re-serve Defendants within 21 days (i.e., by September 29, 2025, the "September 29 Deadline") and requiring Plaintiff "promptly file proof of service" afterward. ECF 38 at 9. The September 8 Order permitted Defendants to renew their motion to dismiss after Plaintiff filed proof of service. *Id.*

During the two weeks following the September 8 Order, the Clerk of the Court notified Plaintiff three times that Plaintiff's requests to reissue the summons were deficient. ECF 39-41. Finally, on September 22, 2025, the Clerk issued a new summons to serve Defendants. ECF 42, 43. On October 6, 2025, one week after the September 29 Deadline, Plaintiff filed affidavits of service asserting that Savile and BFSG were served on September 29. ECF 44-46.

The affidavit of service on BFSG states that service was made pursuant to Section 307 of the New York Business Corporation Law ("BCL 307"). ECF 44 at 1. A separate affidavit states that the summons and complaint were mailed, via United States Postal Service ("USPS"), to BFSG on September 29, and provides a USPS tracking number of RF554770080US. *Id.* at 2.

The affidavit of service on Saville, signed by Ramon Quiroz ("Quiroz Affidavit"), states that the process server attempted to serve Saville on three successive days—September 24, 25, and 26—before affixing the summons and complaint to the gate outside Saville's home on September

29 at 10:55 A.M.,[8] and mailing the materials the same day. ECF 45. According to a separate affirmation of mailing, signed by Kyle Warner ("Warner Affidavit"), Warner mailed the summons and complaint, via USPS, on September 26, 2025, and the USPS confirmation number is 7021 2720 0002 2855 3510 ("3510 Number"). ECF 46. According to USPS's tracking website, both packages were never delivered, and Saville has not, since the September 8 Order, received in the mail the summons or complaint addressed to her or to BFSG. Exs. 7-8; Declaration of Lindsay Saville ("Saville Decl.") ¶ 7.

## STANDARD OF REVIEW

Rule 12(b)(5) permits a party to move to dismiss a complaint for inadequate service of process. In deciding a Rule 12(b)(5) motion, "a [c]ourt must look to Rule 4, which governs the content, issuance, and service of a summons." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). Under Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).

"Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service." *Vantone Grp. Ltd. Liab. Co. v. Yangpu Ngt Indus. Co.*, 2016 WL 3926449, at *2 (S.D.N.Y. July 15, 2016) (citation omitted). "In considering a motion to dismiss pursuant to Rule 12(b)(5), the Court may look beyond the pleadings, including to affidavits and supporting materials, to determine whether service was proper." *Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 215 (S.D.N.Y. 2021). "A defendant's sworn denial of receipt of service . . . rebuts the presumption of proper service established by the process server's affidavit and

[8] The Quiroz Affidavit appears to incorrectly list the date of the affixing as September 29 at 10:55 A.M. instead of September 26 at 10:55 A.M. Saville's nanny discovered the summons and complaint affixed to the gate of Saville's home on September 26, *see* Saville Decl. ¶ 6, which is in line with the last attempt listed on the Quiroz Affidavit.

necessitates an evidentiary hearing." *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002).

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Claims are facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court "must accept as true all of the allegations contained in a complaint," that requirement is "inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* The Court is likewise not required to accept the truth of assertions in a pleading that are "contradicted by more specific allegations or documentary evidence." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

The Court may also consider "matters of which judicial notice may be taken," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), such as "any written instrument attached to" the complaint or "incorporated in it by reference." *Id.* at 152 (citation omitted). The Court may also consider a document if "the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Id.* at 153(citation omitted).

## ARGUMENT

### I. Plaintiff Has Not Properly Served Defendants

Plaintiff has filed three federal complaints, and had *three* attempts to serve Defendants in over 17 months, but has still failed to do so. Plaintiff's third attempt to serve Defendants is ineffective because she has not submitted the required proof of service on BFSG, pursuant to BCL 307, and she has not met the requirements to serve Saville by "nail and mail," under CPLR 308(4). Plaintiff should not be given a fourth chance.

### A. Plaintiff Failed to Properly Serve BFSG

Plaintiff's affidavit of service, ECF 44, asserted service on BFSG pursuant to BCL 307, which has a two-step process for serving foreign corporations not registered in New York. First, serving the New York Secretary of State. Second, providing notice of the service and a copy of the process by either (i) "[d]eliver[ing] personally without this state to such foreign corporation," or (ii) sending "by or on behalf of the plaintiff to such foreign corporation by registered mail with return receipt requested." BCL § 307(b). Service by mailing requires plaintiff to file an affidavit of compliance along with either (a) "the return receipt signed by such foreign corporation or other official proof of delivery," or (b) "if acceptance was refused by it, the original envelope with a notation by the postal authorities that acceptance was refused." *Id.* § 307(c). "Service of process shall be complete ten days after such papers are filed with the clerk of the court." *Id.* Courts require strict compliance with BCL 307. *Flick v. Stewart-Warner Corp.*, 76 N.Y.2d 50, 57 (1990).

The affidavits of service and mailing on BFSG indicate that Plaintiff mailed the summons and complaint to BFSG, rather than opting for personal delivery. *See* ECF 44. But neither affidavit includes either the return receipt (or other proof of delivery), or the USPS envelope indicating that it was refused. *See id.* Nor could they, since USPS's records confirm, and Saville declares, that the packages have not been delivered and that BFSG has not refused delivery. *See* Ex. 7; Saville Decl. ¶ 7.[9] Plaintiff's affidavits therefore are defective and service is incomplete. *Flannery v. General Motor Sports*, 86 N.Y.2d 771, 773 (1995) (noting that a defect in complying with procedures in

[9] Even if Plaintiff's affidavit of service satisfied BCL 307 (which it does not), Plaintiff's service on BFSG would not have been complete until October 16, 2025—17 days after the Court's deadline to complete service—since BCL 307 provides that service is not complete until 10 days after a proof of service is filed. *See* BCL § 307(c). As a result, service was incomplete by the Court's September 29 Deadline. *See Stop & Shop Supermarket Co. v. Goldsmith*, 2011 WL 1236121, at *4-5 (S.D.N.Y. Mar. 31, 2011) (finding service, under CPLR 308(2), was incomplete until 10 days after filing proof); *Pope v. Rice*, 2005 WL 613085, at *14 n.16 (Mar. 14, 2005) (noting that BCL 307 provides "an analogous method of service" as CPLR 308(2), and that New York Court of Appeals has found that failure to comply with BCL 307(c) is a jurisdictional defect).

BCL 307 is jurisdictional and not a curable irregularity); *Albee Specialists, Inc. v. Paragon Sportswear, Inc.*, 1990 WL 155593, at *1 (S.D.N.Y. Oct. 10, 1990) (service improper under BCL 307 where plaintiff did not file return receipt signed by defendant or envelope with notation that mailing was refused); *Lansdowne Fin. Servs. Ltd. v. Binladen Telecomms. Co.*, 95 A.D.2d 711, 712 (1st Dep't 1983) (plaintiff could not provide proof of compliance with BCL 307 because plaintiff did not receive either return receipt or envelope with notation that acceptance was refused).

### B. Plaintiff Failed to Properly Serve Saville

In order to serve Saville individually, Plaintiff was required to comply with the procedures in Section 308 of the New York Civil Practice Law and Rules ("CPLR 308"). Plaintiff's affidavit of service asserts that she served Saville according to the two-step "nail and mail" procedure under CPLR 308(4). ECF 45. Under CPLR 308(4), "[w]hen a plaintiff cannot, with *due diligence*, effect service personally or via the two-step 'deliver and mail' process, 'nail and mail' service may also [be] permissible." *Futia v. Roberts*, 2023 WL 8237246, at *7 (S.D.N.Y. Nov. 28, 2023) (emphasis added). The "due diligence" requirement of CPLR 308(4) "should be strictly observed, given the reduced likelihood that a summons served pursuant to that section will be received." *Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002) (citation omitted).

Once "due diligence" is satisfied, CPLR 308(4) permits a process server to (1) "affix the summons and complaint to the door of either the defendant's actual place of business, dwelling, or usual place of abode," and (2) requires the process server to "first class mail the summons and complaint to the defendant's residence or place of business." *Futia*, 2023 WL 8237246, at *7 (citation omitted). A plaintiff must then file with the court proof of such "nail and mail" service within 20 days of either the affixing or mailing, whichever is effected later, and service is only complete 10 days after the affidavit of service is filed. CPLR § 308(4).

Plaintiff resorted to "nail and mail" procedures after attempting service on three consecutive weekdays: September 24, September 25, and September 26. *See* ECF 45. But service on three consecutive weekdays is insufficient to satisfy the "due diligence" requirement. *See Kopec v. GMG Const. Corp.*, 2011 WL 2650597, at *3 (E.D.N.Y. July 6, 2011) (plaintiff incorrectly resorted to CPLR 308(4) after "process server made only three attempts, all on consecutive weekdays"); *Spath v. Zack*, 36 A.D.3d 410, 413 (1st Dept. 2007) (three attempts at service were insufficient because "[n]one of these attempts was made on a weekend, nor [was] there any indication that the process server made any inquiries to ascertain [the party's] whereabouts"). Plaintiff's hasty attempts at service the week before this Court's September 29 Deadline fare no better than her first two, and Plaintiff (a represented party) should not be afforded more chances.

Separately, the Quiroz and Warner Affidavits are inconsistent regarding key facts: who mailed the summons and complaint, when it was mailed, and what class of mail was used.[10] The Warner Affidavit states that the summons and complaint were mailed on September 26 by Certified Mail with the 3510 Number. ECF 46. USPS's tracking history shows the first event for the 3510 Number was on October 1, 2025, suggesting the mailing date of September 26 is incorrect. Ex. 8. Regardless, the September 26 mailing is defective because it was mailed by Certified Mail and not First Class mail, as required by CPLR 308(4). *See Peale v. James*, 2025 WL 2732859, at *5 (S.D.N.Y. Sept. 25, 2025) (plaintiff "has not effectuated service under [CPLR] 308" where mailing was by "certified mail, not first-class mail, and did not bear the words 'personal and confidential'"). Inconsistently, the Quiroz Affidavit states that the summons and complaint were mailed on September 29, 2025, by First Class mail, but the affidavit did not include a USPS

[10] Plaintiff's purported service on Saville was incomplete until October 16, 2025, or 10 days after Plaintiff filed the Quiroz and Warner Affidavits. Since CPLR 308(4) provides that service is complete 10 days after the proof of service is filed, service on Saville was incomplete on the September 29 Deadline. *Stop & Shop*, 2011 WL 1236121, at *5.

tracking number to confirm the package was sent. ECF 45. Since the September 8 Order, Saville has not received the summons and complaint in the mail. Saville Decl. ¶ 7. The Quiroz and Warner Affidavits therefore fail to present sufficient proof that Plaintiff complied with the "nail and mail" procedures set forth in CPLR 308(4).

Because Plaintiff's renewed attempts to serve Defendants are, once again, defective, the Court should dismiss this action with prejudice. *Muhammad v. Annucci*, 2023 WL 2908658, at *4 (S.D.N.Y. Feb. 27, 2023), *report and recommendation adopted*, 2023 WL 2557314 (S.D.N.Y. Mar. 17, 2023) (granting dismissal with prejudice where plaintiff was granted second attempt at serving defendants but again failed); ECF 38 (no good cause for failure to properly serve Defendants).

## II. The SAC Fails to State an FLSA Claim

The SAC's first cause of action alleges that Plaintiff suffered FLSA damages due to (i) unpaid November and December 2022 invoices for Plaintiff's work, and (ii) the portion of BFSG's profits that Plaintiff was allegedly owed as a bonus in 2022. SAC ¶ 44. In essence, Plaintiff's FLSA claim is based on damages related to purported unpaid wages.

To state a FLSA wage claim, a plaintiff must establish (1) that the plaintiff was an employee of the defendant, (2) the plaintiff was engaged in or employed by an enterprise engaged in interstate commerce, and (3) that the defendant failed to pay the plaintiff the minimum wage or overtime required by the FLSA. *Zhong v. Aug. Aug. Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007) (citing 29 U.S.C. §§ 206(a)(1), 207(a)(1), 216(b)). Plaintiff's FLSA claim fails because the SAC does not allege (i) a minimum wage or overtime claim; or (ii) that BFSG was Plaintiff's employer.

### A. Plaintiff Does Not State a Cognizable FLSA Claim

In her pre-motion letter, Plaintiff stated that she is "seeking relief under the FLSA for misclassification as an independent contractor, *not for overtime pay*." ECF 20 at 3 (emphasis

added).[11] But courts have repeatedly found that there is no cognizable FLSA claim for misclassification as an independent contractor separate and apart from a minimum wage or overtime claim.

The Second Circuit has long recognized that the "FLSA statute requires payment of minimum wages and overtime wages *only* . . . therefore, the FLSA is unavailing where wages do not fall below the statutory minimum and hours do not rise above the overtime threshold." *Nakhata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) (emphasis added) (citation omitted); *Lewis v. Affiliated Enter. Sols., LLC*, 2024 WL 1652460, at *2 (N.D.N.Y. Apr. 17, 2024) (finding FLSA does not provide a claim for misclassification on its own). Therefore, the SAC's allegations that Plaintiff was misclassified as an independent contractor, without alleging that Plaintiff was denied minimum wage or overtime wages, is not cognizable. *See Nakhata*, 723 F.3d at 201-02; *Lewis*, 2024 WL 1652460, at *2.

Yet even setting Plaintiff's clear representation aside, no facts in the SAC could reasonably give rise to an unpaid overtime or minimum wage claim. *Nakahata*, 723 F.3d at 201 (to allege an FLSA overtime claim, a plaintiff "must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week"); *Paschalidis v. Airline Rest. Corp.*, 2021 WL 5013734, at *4 (E.D.N.Y. Oct. 28, 2021) (for a minimum wage claim, "a plaintiff must plead facts about when, and for how many hours, he worked for less than a minimum wage, such that the complaint indicates the applicable rate of pay and the amount of unpaid minimum wages due"). Unsurprisingly, the SAC is devoid

[11] While the SAC cites to 29 U.S.C. § 216(b), SAC ¶ 45, which permits recovery for violations of the FLSA's minimum wage and overtime provisions, Plaintiff has clarified that she is not, in fact, seeking relief under either of those provisions.

of any allegations that Plaintiff worked more than 40 hours a week for BFSG,[12] or that Plaintiff was not paid a minimum wage. As a result, Plaintiff's FLSA claim should be dismissed.[13]

**B. Plaintiff Fails to Establish She was An Employee as Required by the FLSA**

Plaintiff's FLSA claim also fails for a second, independent reason, namely: Plaintiff has not properly alleged that she was an employee of BFSG, as required by the FLSA. The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "In light of the definition's circularity, courts have endeavored to distinguish between employees and independent contractors based on factors crafted to shed light on the underlying economic reality of the relationship." *Saleem v. Corporate Transp. Grp., Ltd.*, 854 F.3d 131, 139 (2d Cir. 2017). The Second Circuit has enumerated five factors that courts should consider when determining whether workers are employees or independent contractors:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988). A court's "ultimate concern" when applying the *Brock* factors is "whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves." *Id.* at 1059.

The SAC is replete with allegations that establish that Plaintiff was in business for herself and did not rely on BFSG. For example, the SAC states that "BFSG gave [Plaintiff] 1099 forms,

---

[12] Plaintiff alleged in the FAC that she worked 40 hours a week or more, *see* FAC ¶¶ 23-25, 27, 29, 30, but the SAC *removed* those allegations.

[13] Because Plaintiff's FLSA claim is not cognizable, Defendants do not address the numerous additional pleading issues plaguing this Count, including the SAC's sole mention of "historic agreements for each year from 2017 through 2021," without any allegations concerning the details of these agreements.

for every tax year of their employment relationship, from 2014 through 2022." SAC ¶ 35. Courts in this District have repeatedly recognized that a plaintiff's 1099 tax status indicates plaintiff is an independent contractor. *E.g.*, *Sellers v. Royal Bank of Can.*, 2014 WL 104682, at *8 (S.D.N.Y. Jan. 8, 2014) ("Plaintiff received 1099 forms . . . and had his own federal Employer ID Number, and defendants did not withhold payroll or other employment-related taxes or issue W-2 forms to plaintiff" which "signifies that [plaintiff] was in fact an independent contractor"); *Saleem v. Corporate Transp. Grp., Ltd.*, 52 F. Supp. 3d 526, 540 (S.D.N.Y. 2014) (same).

The SAC also incorporates Plaintiff's invoices to BFSG, which establish her status as an independent contractor. *See* SAC ¶¶ 28-29. On their face, the November and December 2022 invoices state they are from Plaintiff's company (FMCH) which was incorporated in Georgia as a "consulting services" company. Exs. 1, 4-5. These invoices also feature the logo for Plaintiff's business, as well as list Plaintiff's address, work email ("francine@francinehancock.com"), and phone number. Exs. 4-5. Plaintiff's practice of submitting invoices to BFSG for payment for services rendered is entirely inconsistent with being an employee. *See Cox v. German Kitchen Ctr. LLC*, 2023 WL 8648839, at *7 (S.D.N.Y. Dec. 14, 2023) (finding plaintiff's practice of "generat[ing] an invoice on behalf of his corporate entity which included the number of hours he decided to work" and "provid[ing] the invoice to Defendants for payment" were "wholly inconsistent with that of an employee"); *Sellers*, 2014 WL 104682, at *9 (same).

Even Plaintiff's website is clear: Plaintiff's business depends on her work for *multiple* customers, including but not limited to BFSG. For example, FMCH's website stated it is "a boutique agency for *small and medium [sized] businesses* serving the Beauty Industry + More," and that it "will work closely with the *customer* . . . to meet business needs, with or without the use of [FMCH's] implementation team." Ex. 2 (emphasis added). Most tellingly, at the time of

Defendants' initial motion to dismiss, FMCH's website listed several of its prior clients, which included BFSG. Ex. 3. In other words, Plaintiff herself advertised that FMCH was an independent company offering consulting services and that BFSG was a prior customer that used those services.

The allegations in the SAC and Plaintiff's own statements on FMCH's website establish that Plaintiff was in business for herself, and she did not rely on BFSG for the opportunity to render her services. For this additional reason, the FLSA claim should be dismissed.

## III. The SAC Fails to State a NYLL Claim

Plaintiff next alleges that Defendants violated Section 193 of the NYLL by not paying Plaintiff her 2022 Bonus. SAC ¶¶ 56-60; ECF 20 at 3.[14] Section 193 provides that "[n]o employer shall make any deduction from the wages of an employee," except under certain statutorily enumerated circumstances. NYLL § 193(1). To plead a Section 193 claim, a plaintiff must allege: (i) an "employer-employee relationship", (ii) "the employer [made] a deduction from the employee's wages," and (iii) "the deduction is not otherwise permitted by law or authorized for the employee's benefit." *Short v. Churchill Benefit Corp.*, 2016 WL 8711349, at *8 (E.D.N.Y. Apr. 8, 2016). Plaintiff's NYLL claim fails for three distinct reasons: (1) the SAC does not allege that Plaintiff was an employee of BFSG; (2) the 2022 Bonus does not constitute "wages" under the NYLL; and (3) Plaintiff does not have an enforceable contract for the 2022 Bonus.

### A. Plaintiff Does Not Allege She Was an Employee as Required by the NYLL

As a threshold matter, only "employees" may sue under the NYLL. An "employee" is defined as "any person employed for hire by an employer in any employment." NYLL § 190(2).

[14] Although the SAC alleges that Defendants also violated Section 198(3) of the NYLL, SAC ¶ 56, courts recognize that Section 198(3) does not provide an independent cause of action without another violation under the NYLL, such as Section 193. *Gold v. Am. Med. Alert Corp.*, 2015 WL 4887525, at *2 (S.D.N.Y. Aug. 17, 2015) ("Gold is only entitled to section 198's double recovery if he can show that AMAC violated section 193, the only Article 6 claim he makes.").

To determine whether a worker is considered an employee, courts consider "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (2003). The *Bynog* factors are similar to the factors courts consider under the FLSA, but under the NYLL, "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Id.* Courts in this Circuit have applied the NYLL and FLSA factors together, and "there appears to never have been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." *Ivanov v. Builderdome, Inc.*, 2021 WL 2554620, at *12 (S.D.N.Y. June 22, 2021) (citation omitted).

Accordingly, for the same reasons that Plaintiff was an independent contractor under the FLSA, Plaintiff was an independent contractor under the NYLL. *Franze v. Bimbo Foods Bakeries Distrib.*, 2019 WL 2866168, at *11 (S.D.N.Y. July 2, 2019). Plaintiff's website declaring herself a consultant for other businesses, her status as a 1099 employee, and the invoices she submitted to BFSG all support only one conclusion: that she was an independent contractor.

Additional facts, as outlined in (or omitted from) the SAC, make clear that Plaintiff cannot satisfy the *Bynog* factors. Nowhere does the SAC allege that BFSG dictated when or where Plaintiff worked.[15] *See Ivanov*, 2021 WL 2554620, at *12 (finding that plaintiff worked at her own

---

[15] The Court should disregard Plaintiff's single conclusory statement that "[s]he was expected to work 8am to 6pm, on a regular basis," SAC ¶ 35, for which Plaintiff alleges no supporting facts (i.e. even a single day where she worked those hours). In fact, the SAC is riddled with contradictory assertions. SAC ¶ 26 (Plaintiff agreed to "23 hours of work per month"); SAC ¶ 29 ("Francine worked 49 hours in [all of] November 2022"). *See U.S. Bank. Nat'l Ass'n v. Bank of Am., N.A.*, 2012 WL 6136017, at *7 (S.D.N.Y. Dec. 11, 2012) ("Where plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." (citation omitted)).

convenience where she "set her own schedule" and the "only constraint on her time was the obligation to attend . . . Saturday meetings"). Plaintiff was also free to engage in other employment, since she controlled her own business operations and managed relationships with her own clients. *Id.* (concluding that plaintiff engaged in other employment where she "remain[ed] on the retainer of one company while working for [defendant] and taking on assignments of others, all without the need to obtain the permission of or even provide notice to [defendant]").

Thus, as under the FLSA, Plaintiff's claim as an employee under NYLL also must fail.

**B. The 2022 Bonus Did Not Constitute "Wages" Under the NYLL**

Plaintiff's NYLL claim fails for another reason: because the 2022 Bonus was not "wages" as required to state a claim under the statute. Section 190(1) of the NYLL defines "wages" as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." NYLL § 190(1). Section 190(1)'s definition of "wages" "exclud[es] certain forms of 'incentive compensation' that are more in the nature of a profit-sharing arrangement and are both contingent and dependent, at least in part, on the financial success of the business enterprise." *Truelove v. Ne. Cap. & Advisory, Inc.*, 95 N.Y.2d 220, 223-24 (2000). In other words, "wages" does not include a "discretionary bonus awarded from a bonus pool whose declaration depend[s] on the 'employer's overall financial success,' rather than on the 'personal productivity' of the employee, [which is] outside the statutory definition of wages." *Guiry v. Goldman, Sachs & Co.*, 31 A.D.3d 70, 72 (1st Dep't 2006). The term does, however, encompass bonuses that are "expressly link[ed]" to the employee's "labor or services personally rendered," such as "guaranteed and non-discretionary" bonuses. *Ryan v. Kellogg Partners Inst. Servs.*, 19 N.Y.3d 1, 16 (2012) (quoting *Truelove*, 95 N.Y.2d at 224).

In *Truelove*, a financial analyst in a non-revenue generating position at an investment bank sued the bank to recover the unpaid balance of a bonus that was fully awarded but payable in

quarterly installments. 95 N.Y.2d at 222-23. The bonus was awarded based on "a combination of the individual's performance and [the bank's] performance" as reflected in its yearly revenues. *Id.* at 222. The *Truelove* court found that the bonus payments were not "wages" within the meaning of Section 190(1) because the bonus was not based on "plaintiff's own personal productivity" but on the "employer's overall financial success." *Id.* at 224. The court reasoned that, "in expressly linking earnings to an employee's labor or services personally rendered, [the statute] contemplates a more direct relationship between an employee's own performance and the compensation to which that employee is entitled." *Id.*

The 2022 Bonus is exactly the type of incentive compensation that the *Truelove* court found was excluded from the statutory definition of "wages." The SAC alleges *seven times* that the 2022 Bonus was linked to a "year[-]end split of 50% . . . of BFSG's profits." SAC ¶¶ 24, 26, 44, 52, 54, 60, 62. The SAC is devoid of any factual allegations that directly link the 2022 Bonus—or BFSG's profits for that matter—to Plaintiff's work. Instead, it recites a single conclusory statement with no explanation: that the 2022 Bonus was "part of [Plaintiff's] annual compensation," and that the 2022 Bonus was "never intended" and "never identified" as "discretionary." SAC ¶¶ 24, 26. These bald allegations, unsupported by any facts in the SAC, are precisely the types of conclusory statements which should not be credited on a motion to dismiss.[16] *Iqbal*, 556 U.S. at 678. But even assuming the 2022 Bonus was "non-discretionary," New York courts recognize that a bonus does not constitute "wages" when it is linked to the success of the employer and not an employee's work. *Vekaria v. Mthree Corp. Consulting Ltd.*, 2024 WL 4337542, at *8 (S.D.N.Y. Sept. 27, 2024) ("New York courts . . . have held that the mandatory nature of an employee's compensation is not

[16] Similarly, the fact that the SAC repeatedly refers to the 2022 Bonus as a "performance bonus," with no facts to support that assertion, should also not be credited on this Motion.

by itself enough to bring it within the NYLL's definition of 'wages'"). Instead, "what matters just as much, if not more, than the discretionary or nondiscretionary nature of compensation is the purpose that the compensation serves and whether its value is more strongly connected to the employee's personal performance or to the employer's overall financial success." *Id.*

Ultimately, the 2022 Bonus "bears the hallmark of incentive compensation" because "'its value to [Plaintiff] depends on [BFSG's] 'overall financial success,' not simply on [Plaintiff's] 'personal productivity.'" *Guiry*, 31 A.D.3d at 73 (quoting *Truelove*, 95 N.Y.2d at 224). Because the 2022 was linked to BFSG's profits, not Plaintiff's work, it does not qualify as "wages." *See, e.g.*, *Vekaria*, 2024 WL 4337542, at *8 (dismissing NYLL claim where complaint "alleges no facts indicating that [plaintiff's] promised equity in [defendant corporation] was in any way connected to his personal job performance"); *Komlossy v. Faruqi & Faruqi, LLP*, 2017 WL 722033, at *13 (S.D.N.Y. Feb. 23, 2017) (finding that former law firm partner's bonus award, based on firm's success in litigation matter, did not constitute "wages"), *aff'd*, 714 F. App'x 11 (2d Cir. 2017). Plaintiff's NYLL claim should therefore be dismissed on this basis alone.

### C. Plaintiff Has No Enforceable Right to the 2022 Bonus

Lastly, Plaintiff's NYLL claim should be dismissed because Plaintiff failed to allege a breach of contract claim based on the 2022 Bonus. "The failure of [a plaintiff's] contract claim also necessarily defeats his wage claim under New York Labor Law § 193." *O'Grady v. BlueCrest Cap. Mgmt. LLP*, 646 F. App'x. 2, 4 (2d Cir. 2016); *Komlossy*, 2017 WL 722033, at *13. For the reasons explained below, the alleged agreement to pay the 2022 Bonus violates the New York Statute of Frauds ("Statute of Frauds") and is therefore unenforceable.

## IV. The SAC Fails to State a Breach of Contract Claim

For her breach of contract claim, Plaintiff alleges that she and BFSG entered into two agreements: (1) the PEA, and (2) the 2022 Compensation Agreement. SAC ¶ 47. The 2022

Compensation Agreement was for Plaintiff to "provid[e] services" to BFSG from January 1, 2022, until December 31, 2022. *Id.* ¶¶ 27, 47. The SAC alleges that Defendants breached the 2022 Compensation Agreement when they terminated Plaintiff on November 11, 2022, as opposed to having Plaintiff provide services to BFSG until December 31, 2022, and by not paying Plaintiff's November and December invoices as well as the 2022 Bonus. *Id.* ¶¶ 50-52. The SAC also alleges that Defendants breached the PEA "by declaring Plaintiff's vested equity interest to be nonexistent." *Id.* ¶ 53.

To state a breach of contract claim under New York law, Plaintiff must establish "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) breach by the other party, and (4) damages suffered as a result of the breach." *Monocoque Diversified Ints., LLC v. Aquila Air Cap. (Ir.) DAC*, 2024 WL 1312996, at *10 (S.D.N.Y. Mar. 27, 2024). The Statute of Frauds provides that an agreement not reduced to writing is "void" if the agreement "by its terms is not to be performed within one year from the making thereof . . . ." N.Y. Gen. Oblig. Law § 5-701(a)(1). Plaintiff's breach of contract claim fails because both the PEA and the 2022 Compensation Agreement violate the Statute of Frauds.

**A. The PEA**

The PEA contains several provisions regarding a bonus payment based on BFSG's profits. Section 1 of the PEA provides that Plaintiff would be "eligible to participate in the Company's Annual Bonus Plan, and the Company shall make a bonus payment . . . in respect of each fiscal year, calculated as your Percentage of the net pre-tax profits of the Company for such fiscal year before payment of any dividends to shareholders, *so long as you remain an employee of the Company in good standing on the payment date*." Ex. 6 § 1 (emphasis added). The PEA defines "Percentage" as the "Equivalent Equity Interest, to the extent vested, expressed as a percentage of

the fully diluted equity of the Company as of a given date," *Id.* § 4(b)(i), and "Equivalent Equity Interest" means "Twenty Five (25) shares of Common Stock." *Id.* § 4(b)(h).

Courts routinely recognize that annual payments based on a company's profits cannot be performed within one year because "[i]t is impossible that annual profits could be earned and distributed within one year of the alleged agreement." *See Morgenwek v. Vision Cap. Advisors, LLC*, 410 F. App'x 400, 402 (2d Cir. 2011) (Statute of Frauds applied to agreement that defendant pay plaintiff "some percentage of annual profits"); *Thin Film Lab, Inc. v. Comito*, 218 F. Supp. 2d 513, 530 (S.D.N.Y. 2002) (agreement providing for 10% of profits over $400,000 for calendar year, payable at the start of the next calendar year, was unenforceable under the Statute of Frauds). As a result, agreements to pay annual bonus payments based on company profits must comply with the Statute of Frauds. *See KJ Roberts & Co. v. MDC Partners Inc.*, 2014 WL 1013828, at *7 (S.D.N.Y. Mar. 14, 2014) (Statute of Frauds applied to agreement requiring defendant to pay a "percentage of the hedge fund's annual profits").

Plaintiff's breach of contract claim based on the PEA fails under a Statute of Frauds analysis since it was never executed by Defendants. The Statute of Frauds requires that a written agreement be "subscribed by the party to be charged." *Doehla v. Wathne Ltd., Inc.*, 1999 WL 566311, at *4 (S.D.N.Y. Aug. 3, 1999). "A party subscribes to a document for purposes of the statute of frauds when she affixes her signature thereto with the intent to authenticate it as her own." *Id.* at *5 (letter agreement failed to satisfy the Statute of Frauds since it was not signed by defendant companies). Since the PEA was never signed by the Defendants, it necessarily does not satisfy the Statute of Frauds.

**B. The 2022 Compensation Agreement**

The alleged 2022 Compensation Agreement also fails to satisfy the Statute of Frauds. Plaintiff alleges that the 2022 Compensation Agreement was meant to continue her compensation

structure from the two previous years: $5,750 per month and an annual bonus of 50% of company profits each year.[17] SAC ¶¶ 24, 26. As part of the 2022 Compensation Agreement, Plaintiff alleges she would work from January 1, 2022, until December 31, 2022. *Id.* ¶¶ 48, 51. The SAC makes clear, however, that the 2022 Compensation Agreement merely continued the compensation that Plaintiff received from BFSG for 2020 and 2021. Specifically, Plaintiff was compensated in 2020 and 2021 with $5,750 per month and an annual bonus of 50% of BFSG's profits, and that compensation allegedly continued "[f]or the first six months of 2022" and then, in August 2022, Saville agreed to "continue compensating [Plaintiff at] $5750.00 per month" and pay "an annual bonus of 50% . . . of [BFSG's] profits." *Id.* ¶¶ 24-26.

Ultimately, like the PEA, the 2022 Compensation Agreement's supposed obligation to pay Plaintiff 50% of BFSG's profits (i.e., the 2022 Bonus), could not be performed within one year. *See Morgenwek*, 410 F. App'x at 402; *KJ Roberts*, 2014 WL 1013828, at *7-8. As a result, the 2022 Compensation Agreement must be in writing in order to satisfy the statute of frauds. But the SAC is silent as to whether the 2022 Compensation Agreement was ever reduced to a written agreement or executed by Defendants. *See* SAC ¶¶ 24-26, 47-49. This claim, too, must fail.

## V. The SAC Fails to State Claims for Unjust Enrichment and Promissory Estoppel

Finally, Plaintiff brings equitable claims for unjust enrichment and promissory estoppel. To state a claim for promissory estoppel under New York law, a plaintiff must plead "(1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance on that promise; and (3) injury to the relying party as a result of the reliance." *Gallagher v. N.Y.C. Health & Hosps. Corp.*, 2017 WL 4326042, at *7 (S.D.N.Y. Sept. 20, 2017) (citation omitted). An unjust enrichment claim

---

[17] The SAC is not clear as to whether the 2022 Compensation Agreement amends, replaces, or continues the PEA. If it continues the terms of the PEA, this claim would fail for another reason: because by its express terms, the PEA's bonus provision only applies while Plaintiff is working for BFSG. Plaintiff admits that, by the time the 2022 Bonus was due, Plaintiff was no longer working at BFSG.

requires that a plaintiff allege that "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516 (2012) (citation omitted). Both of these claims cannot satisfy the Statute of Frauds, and are impermissibly duplicative of Plaintiff's contract claim, and should therefore be dismissed.

### A. Plaintiff's Equitable Claims Are Subject to the Statute of Frauds

Under New York law, claims for promissory estoppel and unjust enrichment must be dismissed where the alternative breach of contract claim is barred by the Statute of Frauds. *See City Calibration Ctrs. Inc. v. Heath Consultants Inc.*, 727 F. Supp. 3d 332, 358-59 (E.D.N.Y. 2024) (promissory estoppel); *Alkholi v. Macklowe*, 858 F. App'x 388, 392 (2d Cir. 2021) (unjust enrichment). As described above, Plaintiff's breach of contract claim is barred by the Statute of Frauds because the PEA and 2022 Compensation Agreement could not be performed within one year, and the agreements were never reduced to a signed writing. *See Morgenwek*, 410 F. App'x at 402; *KJ Roberts*, 2014 WL 1013828, at *7-8; *Doehla*, 1999 WL 566311, at *5. Plaintiff's equitable claims are therefore subject to the same deficiencies as her contract claim.

### B. Plaintiff's Equitable Claims Are Duplicative of the Contract Claim

"[W]here a plaintiff brings both contract and promissory estoppel claims, the plaintiff must 'allege[] that the defendant had a duty independent from any arising out of the contract." *Gen. Assembly Space, Inc. v. Soc. Fin. Career Impact Bond Gen. Assembly LLC*, 2024 WL 1020246, at *7 (S.D.N.Y. Mar. 8, 2024) (citation omitted). If the plaintiff does not assert a promissory estoppel claim based on an independent duty separate and apart from a contract, "[c]ourts dismiss promissory estoppel claims as duplicative." *Id.* (citation omitted). Similarly, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012); *NetJets Aviation, Inc. v.*

*LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (noting claims are duplicative when arising from the same facts and do not allege distinct damages).

Plaintiff's equitable claims are based on the exact same duty as her contract claim: the obligations under the alleged 2022 Compensation Agreement. SAC ¶¶ 48-52 (breach of contract), 62-63 (promissory estoppel), 68-69 (unjust enrichment). Plaintiff simply has not alleged that Defendants had an independent duty for her equitable claims separate from Defendants' alleged duties under the 2022 Compensation Agreement. This is an impermissible attempt to pass off Plaintiff's contract claim as an equitable claim, and the equitable claims should therefore be dismissed. *See Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 285 (E.D.N.Y. 2021) (dismissing unjust enrichment claim as duplicative since it arose out of identical facts as other claims); *Nungesser v. Columbia U.*, 169 F. Supp. 3d 353, 374 (S.D.N.Y. 2016) (same).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss, and Plaintiff's claims should be dismissed with prejudice and without further leave to replead.

Dated: October 27, 2025
New York, New York

PETRILLO KLEIN & BOXER LLP

By: */s/ Emma Spiro*
Emma Spiro
Marcelo A. Triana
655 Third avenue, 12th Floor
New York, NY 10017
Tel: 212-370-0330
espiro@pkbllp.com
mtriana@pkbllp.com

*Counsel for Defendants*