**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FRANCINE HANCOCK, aka,
FRANCINE COLLORO

Civil Action No.: 24-3921

Plaintiff(s),

-against-

BEAUTY FASHION SALES GROUP INC.,
LINDSAY CRAMES SAVILLE, aka, LINDSAY CRAMES, aka, LINDSAY SAVILLE

Defendant(s).

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Law Office of Bridget Butler, Esq.
11 Broadway, Suite 615
New York, New York 10004

*Attorneys for Plaintiff*

# TABLE OF AUTHORITIES

**Caselaw**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)…………………………………………………………...3

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87 (2d Cir. 2007)………………………..3

*Bankers Trust Co. of Cal. v. Tsoukas,* 756 N.Y.S.2d 92 (App. Div. 2003)..................................3

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)........................................................................3

*Beneficial Homeowner Serv. Corp. v. Girault,* 60 A.D.3d 984, 875 N.Y.S. 2d 815

(2d Dep't 2009)……………………………………………………………………………..4

*Castellotti v. Free*, 138 A.D.3d 198 (1st Dep't 2016)…………………………………….…...13

*DeFilippo v. Ridge Contr. Corp. et al*, 2023 NY Slip Op 31450……………………………12,13

*EEOC v. Port Auth.,* 768 F.3d 247 (2d Cir. 2014)……………………………………………..3

*Flick v. Stewart-Warner Corp*., 76 N.Y.2d 50 (1990)…………………………………………4

*Georgia Malone & Co. v. Reider,* 19 N.Y.3d 511 (2012)……………………………………..13

*Mayor & City Council of Balt. v. Citigroup, Inc.,* 709 F.3d 129 (2d Cir. 2013)..........................3

*Nationstar Mortgage LLC v. Muhammad T. Kamil*, 155 A.D.3d 966 (2017)…………………6

*Ryan v. Kellogg Partners Institutional Servs*., 19 N.Y.3d 1 (2012)……………………………9,10

*Stonehill Cap Mgmt. LLC v. Bank of the West*, 68 N.E.3d 683 (N.Y. 2016)…………………11, 12

*Truelove v. Northeast Capital & Advisory, Inc.*, 95 N.Y.2d 220 (1994)………………………10

*U.S. Bank, N.A. v. Peralta,* 37 N.Y.S.3d 308 (App. Div. 2016)...................................................3,4

*U.S. Bank, N.A. v. Tate,* 102 A.D.3d 859, 958 N.Y.S. 2d 722 (2d Dep't 2013) …………………4

*Washington Mutual Bank v. Huggins,* 140 A.D.3d 858, 35 N.Y.S. 3d 127

(2d Dep't 2016)………………………………………………………………………………4

*Wells Fargo Bank, N.A. v. Christie,* 83 A.D.3d 824, 921 N.Y.S. 2d 127 (2d Dep't 2011)……..4

*Wells Fargo Bank, N.A. v. Tricarico, 139 A.D.3d 722, 32 N.Y.S.3d 213* (2d Dep't 2016)……...6

**Statutes**

2021 McKinney's Session Law New of New York, ch. 397[S.858]……………………9

2021 NY Senate-Assembly Bill S858, A1893…………………………………………..9

**Rules**

Fed. R. Civ. P. 4(e)……………………………………………………………..7

Fed. R. Civ. P. 8(d)(2)……………………………………………………………12,13

Fed. R. Civ. P. 12b(5)…………………………………………………………….2,3

Fed. R. Civ. P. 12b(6)…………………………………………………………….2,3

BCL § 307……………………………………………………………………..4,5,7

BCL § 307(b)……………………………………………………………………4,7

BCL § 307(c)(2)…………………………………………………………………4, 5

CPLR § 308(2)…………………………………………………….....................6

NYLL § 190(1)…………………………………………………………………10

NYLL § 193……………………………………………………………………9, 10

Fl. Stat. § 48.031………………………………………………………………7

F. Stat. § 48.091………………………………………………………………7

## PRELIMINARY STATEMENT

This is an employment dispute involving parties who had a ten-year working relationship, after the parties became acquainted, and Plaintiff, a former retail store owner, had encouraged Defendant Saville to start her own beauty and fashion business, sometime in 2013. Plaintiff helped Saville created BFSG and then Plaintiff worked for BFSG at Saville's direction, in various capacities for the next ten years or so, until November 2022, when Saville abruptly fired Plaintiff, a month before she was supposed to leave, per an agreement between the parties. This action arises not only from that premature dismissal and subsequent wage and bonus theft and breach of contract, but also from defendants' repudiation of the parties Beauty Fashion Sales Group, Inc. Bonus Plan and Phantom Equity Agreement, which was fully executed by the parties in early 2017. Finally, Plaintiff seeks compensation for the years-long misclassification of her as an independent contractor, when she was actually an employee of BFSG.

## STATEMENT OF FACTS

Plaintiff refers to the facts stated in the Second Amended Complaint ("SAC"). *See* SAC, No. 1:24-cv-03921- MKV (S.D.N.Y. August 31, 2024), ECF No. 25. Plaintiff refers to the facts stated in the Declaration of Francine Hancock in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss. *See* Hancock Decl., No. 1:24-cv-03921-MKV (S.D.N.Y. October 25, 2024), ECF No. 33. Plaintiff refers to the facts stated in the Declaration of Bridget E. Butler. *See* Butler Decl., No. 1:24-cv-03921-MKV (S.D.N.Y. November 10, 2025), ECF No. 51.

## STANDARD OF REVIEW

Defendant's are seeking dismissal of the Second Amended Complaint pursuant to Federal Rule Civil Procedure 12b(5) and 12b(6). Rule 12b(5) governs dismissal for inadequate service of

process. The plaintiff bears the burden of showing adequate service on all defendants. A process servers sworn statement regarding service creates prima facie showing of adequate service.

Under Rule 12(b)(6) for failure to state a claim, "a complaint must provide `enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.,* 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly,* 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See* *EEOC v. Port Auth.,* 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## ARGUMENT

### I. SERVICE ON BOTH DEFENDANTS WAS PROPER.

A process server's affidavit of service constitutes prima facie evidence that a defendant was properly served. *U.S. Bank, N.A. v. Peralta,* 37 N.Y.S.3d 308, 309-10 (App. Div. 2016); *Bankers Trust Co. of Cal. v. Tsoukas,* 756 N.Y.S.2d 92, 94 (App. Div. 2003). Defendant can refute the affidavit with a sworn denial of receipt of service that contains "specific facts" to rebut the process server's contentions. *Peralta,* 37 N.Y.S.3d at 310. A defendant may rebut the process server's affidavit by submitting an affidavit containing specific and detailed contradictions of the claims in the process server's affidavit, but bare,

conclusory and unsubstantiated denials of service are insufficient to rebut the presumption of proper service (*U.S. Bank, N.A. v. Peralta,* 142 AD3d 988, 37 NYS3d 308 (2d Dep't 2016); *Washington Mutual Bank v. Huggins,* 140 AD3d 858, 35 NYS3d 127 (2d Dep't 2016); *Wells Fargo Bank, N.A. v. Christie,* 83 AD3d 824, 921 NYS2d 127 (2d Dep't 2011); *U.S. Bank, N.A. v. Tate,* 102 AD3d 859, 958 NYS2d 722 (2d Dep't 2013); *Beneficial Homeowner Serv. Corp. v. Girault,* 60 AD3d 984, 875 NYS2d 815 (2d Dep't 2009)).

Plaintiff process servers effectuated proper service on both defendants and neither defendant has offered specific facts that rebut the presumption of valid service.

**A. BFSG was properly served pursuant to Business Corporation Law § 307.**

Service under BCL § 307 on unauthorized foreign corporation, such as BFSG, may be executed by personal service upon the secretary of state and then, actual notice and a copy of the process must also be either (1) personally delivered to the foreign corporation in a manner authorized for service of process by law of the jurisdiction where service is made, or (2) sent by or on behalf of the plaintiff to such foreign corporation by registered mail with return receipt requested. *See Flick v. Stewart-Warner Corp*., 76 N.Y.2d 50, 55 (1990). If the actual notice is effected by mailing, then proof of service shall be by affidavit of compliance with the original envelope with a notation by the postal authorities that acceptance was refused. *See* BCL § 307(c)(2). Strict compliance with the procedures of BCL § 307 is required to effect service on an unauthorized foreign corporation. *See Flick,* 76 N.Y.2d at 57.

Plaintiff effected service on Defendant BFSG under BCL § 307(b) and BCL § 307(b)(2) by (1) personal service of process on the New York Secretary of State and then (2) mailing notice and a copy of the process by registered mail return receipt requested to the specified Florida address for legal process. In accordance with the order of this court of September 8,

2025, proof of service was immediately filed, within 21 days of that order. *See Opinion and Order Denying Motion To Dismiss Without Prejudice*, No. 1:24-cv-03921-MKV (S.D.N.Y. September 8, 2025), ECF No. 38, at page 9.

On November 10, 2025, today, Plaintiff also sent by ordinary mail to the same Florida address for BFSG, a copy of the notice and process together with notice of the mailing by registered mail and refusal to accept, as mentioned in the Declaration of Bridget Butler, filed in support of this opposition, today, November 10, 2025, which details the strict procedural compliance with all necessary steps outlined in BCL § 307 and it includes a copy of the returned process.

Plaintiff's above-described compliance with all necessary procedural steps will render service complete on BFSG, within 10 days of today, pursuant to BCL § 307 (c)(2) and thus constitute prima facie evidence of valid service.

**B. Defendant Saville was properly served by CPLR § 308(4).**

The October 2, 2025 Affirmation of Service by Ramon Quiroz ["Quiroz Affirmation"] constitutes prima facie valid service on Defendant Saville. *See* Quiroz Affirmation, No. 1:24-cv-03921-MKV(S.D.N.Y. October 6, 2025), ECF No. 45. It details the requisite due diligence that he made in undertaking three separate attempts, on three different days, on Defendant Saville's known residential and business address. The record shows that the Quiroz undertook three attempts at personal service on September 24, 25, and 26, 2025, noting that access to the front door was prevented by a locked gate and an unanswered "Ring" doorbell. Then on September 29, 2025, Quiroz made a third and final attempt at personal service and when that was unsuccessful, he affixed a true and exact copy of the Summons and Amended Complaint, on the entrance door to Saville's residence. Finally, also on September 29, 2025, within the statutory timeframe,

Quiroz mailed a true and exact copy of the Summons and Amended Complaint by first class mail to Saville, in an envelope that did not contain any indication that the mailing was from an attorney or a concerned legal action, and the envelope contained the marking "Personal and Confidential". *See* Quiroz Affirmation*, No. 1:24-cv-0321-MKV* (S.D.N.Y. October 6, 2025), ECF No. 45.

Based upon this record the sworn testimony of the process server constitutes prima facie evidence of proper service pursuant to CPLR 308(2). Having established a showing of jurisdiction over the defendant, it was incumbent upon Saville to rebut this prima facie showing by submission of specific and substantive evidence regarding lack of service, but she failed to do so. *See* CPLR § 308(2).

In Defendant Saville's affidavit in support of this motion, she merely alleges that her maid retrieved the envelope on an earlier day. So first, she admits that she was served at her current address. Second, she did not offer an actual statement from her domestic employee, but rather her own self-serving and incredible testimony that otherwise does not suffice as "specific facts" that give rise to rebutting the presumption of valid service, warranting a traverse hearing. *See Nationstar Mortgage LLC v. Muhammad T. Kamil*, 155 A.D.3d 966, 968 (2017). Defendant's affidavit wholly fails to rebut the presumption of due service upon her and therefore cannot give basis for a dismissal. *See Wells Fargo Bank, N.A. v. Tricarico, 139 AD3d 722, 32 NYS3d 213* (2d Dep't 2016).

**C. This court must allow substitute service, pursuant to FRCP Rul 4(e).**

Plaintiff has now attempted to serve both defendants three times in the past 16 months, all the while they have been aware of this litigation and represented by counsel. In fact, after the

returned registered mailing, in this latest effort, if the court deems that somehow the procedures of BCL § 307(b) and (b)(2) were not sufficient, then this court has the discretion to order substitute service on BSFG, under Rule 4(e), which specifically allows for substituted service on a party outside the state as long as it is done in a manner that complies with Florida law. *See* Fed. R. Civ. P. 4(e). Florida Statutes § 48.091 dictates the proper service of process on Florida corporations. *See* FL Stat. § 48.091. If this court finds that Plaintiff has fallen short of the required due diligence and execution of service under BCL § 307, then Plaintiff respectfully requests leave to complete service on BFSG, under Florida Statutes § 48.091 and Defendant Saville, under Florida Statutes § 48.031. *See* FL Stat. § 48.091 & 48.031.

## II. PLAINTIFF STATED VALID CLAIMS UPON WHICH RELIEF MAY BE GRANTED

### A. PLAINTIFF PLED A PROPER CLAIM UNDER THE FAIR LABOR STANDARDS ACT.

#### 1. Plaintiff did plead that she worked above and beyond 23 hours per week, for certain time periods in 2022.

In compliance with the pleading requirements under the Fair Labor Standards Act ("FLSA"), Plaintiff did plead that she worked more hours than contemplated by the minimal monthly salary paid by BFSG, in her anticipation of receiving her annual year-end balloon payment. *See* SAC, No. 1:24-cv-03921-MKV (S.D.N.Y. August 31, 2024), ECF No. 25, ¶13-71. The SAC includes many facts that provide sufficient detail about the length and frequency of Plaintiff's unpaid work to support a reasonable inference that she worked more than forty hours in a given week. Certainly, in October and November 2022, Plaintiff worked more than 40 hours per week. *See id*.

#### 2. Plaintiff established her status as a BSFG employee.

Plaintiff clearly established that she was an employee of BFSG. She pled facts that support her claim to be an employee, including, but not limited to, the execution of a Phantom Equity Agreement, which clearly states her employee status, the fact that in 2020, BFSG recognized her as an employee designating her a W2 employee, for tax purposes, and declaring her as one in its application for loan monies under the Covid-19 pandemic federal program – the Small Business Administration's Paycheck Protection Program, the nature of the work she did for BFSG, her official position as Chief Operations Officer of BFSG, the roughly eight year consistent work relationship with BFSG, the lack of any other employers or separate clients for Plaintiff throughout that eight year span, and the control that Lindsay had over Plaintiff's work for BFSG. All these facts support the finding that Plaintiff was an employee of BFSG.

3. **Defendant conceded that Plaintiff was her employee.**

The key fact that BFSG, on numerous occasions, conceded that Plaintiff was an employee of the company is enough to support the finding of employee status. Aside from all other facts, BFSG actually pledged to the federal government that Plaintiff was its employee, in 2020, when applying for PPP funds. Defendants make no mention of this fact, anywhere in the current motion. The fact that Defendants are denying this fact gives rise to the inference of fraud on the government, in their application under that program. There are numerous other examples of BFSG conceding that Plaintiff was actually an employee, including but not limited to, Saville negotiating yearly salaries, offering her a Phantom Equity Agreement for her role as Chief Operations Officer.[1] Plaintiff identifies further that at the time of the adverse action in December 2022, specifically on December 26, 2022, Saville admitted in an email to the existence and

[1] It's interesting to note that Defendants do not dispute the existence of the Phantom Equity Agreement ["PEA"], in their filings. Defendants actually filed a copy signed by Plaintiff, as an exhibit to two of their motions to date. Defendant took Plaintiff's signed PEA when she sent it to them for countersignature and Defendant just kept it.

validity of the Phantom Equity Agreement. *See* Hancock Decl., No. 1:24-cv-0321-MKV (S.D.N.Y. October 25, 2024), ECF No. 33.

### B. PLAINTIFF PROPERLY PLEAD HER CLAIM UNDER THE NO WAGE THEFT LOOPHOLE ACT

The New York State Legislature passed an amendment to section 193 and section 198 of the Labor Law in August 2021, by virtue of the "No Wage Theft Loophole Act" (the "Act"). *See* 2021 NY Senate-Assembly Bill S858, A1893; *see*, 2021 McKinney's Session Law New of New York, chapter 397[S.858]). This amendment added a provision to each section that states as follows, "There is no exception to liability under this section for the unauthorized failure to pay wages, benefits or wage supplements". *See* NYLL §§ 193 [5], 198 [3]. The Legislative Findings of the Act state, in particular, that "[t]he purpose of this remedial amendment is to clarify that: [a] the unauthorized failure to pay wages, benefits and wage supplements has always been encompassed by the prohibitions of section 193, *see, e.g., Ryan v. Kellogg Partners Institutional Servs*., 19 N.Y.3d 1, 16 (2012)(correctly holding that employer's neglect to pay sum that constituted a 'wage' violated section 193)"(2021 McKinney's Session Law News of NY, ch 397 [S.858], § 1). *See* NYLL § 193.

In the case cited by the Legislature, *Ryan*, the New York Court of Appeals held that the term "wages" encompasses many forms of compensation including non-discretionary bonuses. A bonus is non-discretionary where it is expressly linked to an employee's specific labor and services personally rendered. The Court further elaborated that such a bonus is earned and vested prior to that employee's separation from said employment. By contrast, a discretionary bonus falls outside the scope of the protection of the Act, because by definition, it is a reward to all employees for the success of the employer's business operations, rather than performance based

for specific employees. *See Ryan*, 19 N.Y.3d at 16, *citing Truelove v. Northeast Capital & Advisory, Inc.*, 95 N.Y.2d 220, 224 [1994].

This case is strikingly similar to *Ryan*, insofar, as the end of year balloon payment in dispute was unquestionably a performance-based bonus, just as the year-end bonuses had been for Plaintiff, in 2020 and 2021. BFSG was doing increasingly well financially during those years, in large part to the efforts of Plaintiff. Saville expressly stated that the bonus was compensation to Plaintiff for work performed and this year-end bonus came to be the lion's share of Plaintiff's annual earnings as a BFSG employee, which gave her incentive to remain at the company for as long as she did. The SAC includes specific facts pled to meet the burden of establishing that there was a long-established relationship between the parties which established the year-end bonus as an integral part of Plaintiff's compensation, nearly every year that she worked for BFSG.

When Saville refused to honor the 2022 employment agreement, and pay Plaintiff her final annual bonus, that failure to pay constituted a violation of the NY Labor Law § 193. *See Ryan*, 19 NY3d at 16 ["Since *Ryan*'*s* bonus amounted to wages under the meaning of Labor Law § 190(1), Defendants' refusal to pay him the bonus violated Labor Law §193"]; *See also* NYLL § 193.

Furthermore, Plaintiff adequately pled the existence of an enforceable employment contract for her 2022 final annual bonus, by describing the past dealings between the parties, the specific terms of the agreement, and the fact that Saville offered her the terms which Plaintiff is trying now to enforce, in written correspondence. Saville also admitted the agreement existed, in the December 26, 2022 email, when she repudiated that agreement. The parties stipulated to the existence of the agreement, which was made in August 2022, with a projected performance date,

at the end of December of the same year, so five months out. *See* Hancock Decl., No. 1:24-cv-03921-MKV (S.D.N.Y. October 25, 2024), ECF No. 33.

**C. PLAINTIFF PROPERLY PLEAD A CLAIM FOR BREACH OF THE 2022 YEAR END COMPENSATION AGREEMENT**

Plaintiff properly pled facts to establish the fact that there was a meeting of the minds between the parties as to specific terms for Plaintiff's employment, from August 2022 through December 2022. This timeframe negates, or otherwise rebuts a Statute of Frauds defense, insofar as the term of the 2022 employment agreement Plaintiff is seeking to enforce, was formed in August 2022 for performance in December 2022 or January 2023, only five to six months later. Based on the past dealings of the parties, this was a continuation of annual balloon payments, made by employer to employee. Saville conceded the existence of this 2022 employment agreement, in an email to Lindsay on December 26, 2022. *See* Hancock Decl., No. 1:24-cv-03921-MKV (S.D.N.Y. October 25, 2024), ECF No. 33. That concession offers the requisite showing of mutual assent necessary to constitute the existence of a binding contract. *See Stonehill Cap Mgmt. LLC v. Bank of the West*, 68 N.E.3d 683, 689 (N.Y. 2016). The fact that she now denies the existence of this agreement is not controlling. Plaintiff has pled the requisite facts to establish a claim upon which relief for breach of contract may be granted and the 2022 employment agreement made in August 2022, regarding an end of year 2022 balloon compensation payment, is certainly an agreement with performance reasonably expected to happen in less than one year's time.

**D. PLAINTIFF PROPERLY PLED A CLAIM FOR BREACH OF THE PHANTOM EQUITY AGREEMENT.**

Plaintiff properly pled facts to establish the fact that there was a meeting of the minds between the parties as to specific terms for the Phantom Equity Agreement, in dispute. She

identifies the specific terms of the agreement and the events surrounding it. Saville conceded the existence of this Phantom Equity Agreement, in an email to Lindsay on December 26, 2022. *See* Hancock Decl., No. 1:24-cv-03921-MKV (S.D.N.Y. October 25, 2024), ECF No. 33. That concession offers the requisite showing of mutual assent necessary to constitute the existence of a binding contract. *See Stonehill Cap Mgmt. LLC v. Bank of the West*, 68 N.E.3d 683, 689 (N.Y. 2016). The fact that she now denies the existence of this agreement is not controlling. Plaintiff has pled the requisite facts to give Plaintiff all reasonable inferences, to establish a claim upon which relief for breach of contract may be granted.

## III. PLAINTIFFS EQUITABLE CLAIMS ARE NOT DUPLICATIVE

While some of the facts Plaintiff's plead in reference to equitable claims for unjust enrichment and promissory estoppel may be considered duplicative to those pled for breach of contract, Courts allow parties to plead, in the alternative, when the moving party is denying the existence of a valid and enforceable contract. *See DeFilippo v. Ridge Contr. Corp. et al*, 2023 NY Slip Op 31450; *See also Fed. R. Civ. P. Rule 8(d)(2).*

### A. PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT IS NOT DUPLICATIVE.

While some of the facts Plaintiff's pled in reference to the equitable claim for unjust enrichment may be considered duplicative to those pled for breach of contract, Courts allow parties to plead, in the alternative, when the moving party is denying the existence of a valid and enforceable contract. *See DeFilippo v. Ridge Contr. Corp. et al*, 2023 NY Slip Op 31450. Furthermore Fed. R. Civ. P. Rule 8(d)(2) expressly allows it. *See* Fed. R. Civ. P. Rule 8(d)(2). Therefore, the argument that the contract claims and the equitable claims are erroneously duplicative is frivolous.

An unjust enrichment claim requires a plaintiff to establish that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered. *See Georgia Malone & Co.v. Reider,* 19 N.Y.3d 511, 516-17 (2012), The plaintiff must also plead facts that establish a significant relationship between the parties which would lead to reliance or inducement, on a defendant's promise, in the absence of privity between the parties. *Id.* Plaintiff has clearly pled facts to establish a long-term employment relationship with Defendant Saville and her company BFSG, which establish requisite facts to give a reasonable inference that a valid claim for unjust enrichment has been established.

**B. PLAINTIFF'S CLAIM FOR PROMISSORY ESTOPPEL IS NOT DUPLICATIVE.**

While some of the facts Plaintiff pled in reference to the equitable claim for promissory estoppel may be considered duplicative to those plead for breach of contract, Courts allow parties to plead, in the alternative, when the moving party is denying the existence of a valid and enforceable contract. *See DeFilippo v. Ridge Contr. Corp. et al*, 2023 NY Slip Op 31450. And again, Fed. R. Civ. P. Rule 8(d)(2) allows for alternative theories to be pled.

Plaintiff has plead facts sufficient to establish a valid claim for promissory estoppel. Plaintiff has plead fact which established: (1) a sufficiently clear and unambiguous promise by Saville, (2) Plaintiff's reasonable reliance on that promise, and (3) injury caused to Plaintiff by her reliance. *See Castellotti v. Free*, 138 A.D.3d 198, 204 (N.Y. First Dept. 2016). Therefore, the claim for promissory estoppel should not be dismissed.

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' motion to dismiss.

Respectfully submitted,

Dated: November 10, 2025

By: ***/s/ Bridget Butler***
Bridget Butler, Atty Reg.#4360814
11 Broadway, Suite 615
New York, New York 10004
t(917) 426-3630
f(212) 480-8560
bbutlerlaw@gmail.com

***/s/ Manuel Moses***
Manuel Moses
Moses Law Office of New York PLLC
236 West 26th Street Suite 303
New York, New York 10001
(212) 736-2624 x11
f. 212-981-0528
manuelmoses@icloud.com

*ATTORNEYS FOR PLAINTIFF FRANCINE HANCOCK*